UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

Robert R. Rice,

                                    **Plaintiff,**

                                                                          1:04-CV-0481

v.                                                                             (NAM/DRH)

**Harley Davidson Inc., Buell Motorcycle
Company, LLC and
Buell Distribution Company, LLC,**

                                    **Defendants.**
_____

APPEARANCES:                                               OF COUNSEL:

Cade & Saunders, P.C.                              Karen R. Crandall, Esq.
4 Pine Street
Albany, New York 12207
Attorneys for Plaintiff

Hanlon, Veloce & Wilkinson                     Christine D'Addio Hanlon, Esq.
7 Executive Center Drive
Albany, New York 12203
Attorneys for Defendants

NORMAN A. MORDUE, D.J.:

**MEMORANDUM-DECISION AND ORDER**

**I.     INTRODUCTION**

Robert R. Rice ("plaintiff") commenced this action against Harley Davidson, Inc., Buell Motorcycle Company, and Buell Distribution Company (collectively "defendants") to recover for injuries he sustained while participating in a motorcycle test-ride offered by them. Presently before the Court is defendants' motion for summary judgment pursuant to *Fed.R.Civ.P. 56.* For the reasons set forth below, the Court denies defendants' motion for summary judgement.

1

## II.  FACTUAL BACKGROUND

On June 6, 2003, plaintiff attended the Americade - the world's largest multi-brand motorcycle touring rally - in Lake George, New York.  Many motorcycle manufacturers and distributors, including defendants, participate annually in this particular event.  At Americade, plaintiff had an opportunity to test-ride motorcycles produced by different manufacturers.  Plaintiff chose to participate in a test-ride of a Buell motorcycle.  Defendants were in charge of conducting and supervising the test-ride in question.  Defendants charged plaintiff no monetary fee for participation.  Prior to participating in the test-ride, plaintiff executed a release form in which he agreed to release defendants from all liability for personal injuries caused by defendants' negligence.  In the release, plaintiff also acknowledged that he was an experienced rider and that he was aware of the risks inherent in a motorcycle demonstration ride.

As a part of the test-ride plaintiff was instructed to follow the "lead motorcycle" which was operated by one of the defendants' employees.  Plaintiff alleges that during the test-drive, the employee on the "lead motorcycle" traveled at speeds significantly in excess of the posted speed limits. Plaintiff further alleges that as a result of such reckless driving he could not stay on the road and crashed into a ditch.  Plaintiff contends that due to the severe injuries he suffered, he has no recollection of the actual accident.

## III.  DISCUSSION

### A.  Standard of Review

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Fed. R. Civ. P. 56*.  Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under

the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986). Irrelevant or unnecessary facts do not preclude summary judgment, even when they are in dispute. *See id.* The moving party bears the initial burden of establishing that there is no genuine issue of material fact to be decided. *See Celotex Corp v. Catrett*, 477 U.S. 317, 323 (1986). With respect to any issue on which the moving party does not bear the burden of proof, it may meet its burden on summary judgment by showing that there is an absence of evidence to support the nonmoving party's case. *See id.* at 325. Once the movant meets this initial burden, the nonmoving party must demonstrate that there is a genuine unresolved issue for trial. *See Fed. R. Civ. P. 56(e)*. It is with these considerations in mind that the Court addresses defendants' motion for summary judgment.

**B.      Whether Release is Enforceable Under the Common-Law Principles?**

As a general principle, courts look with disfavor on disclaimers of liability. *See Gross v. Sweet*, 49 N.Y.2d 102, 106 (1979). Absent a conflict with statute or public policy, however, the courts will enforce such disclaimers. *See id.* In determining whether to enforce a disclaimer clause, the courts consider a number of factors: (1) the intent of the parties; (2) the clearness and comprehensibility of the language used in the disclaimer clause; (3) the parties' awareness of the disclaimer prior to entering the transaction; and (4) the frequency with which the disclaimers appear in the type of transaction under consideration. *See Mut. Marine Office v. Atwell, Vogel & Sterling*, 485 F. Supp. 351, 354 (S.D.N.Y. 1980).

According to New York courts, an exculpatory clause will not be deemed to insulate a party from liability for its own negligence or fault, unless the intention to exculpate is expressed in "unmistakable language." *See Levine v. Shell Oil Co.*, 28 N.Y.2d 205, 212 (1971). Furthermore, broad or sweeping language is insufficient to effect a release of liability for a party's

3

own negligence or fault. *See Anunziatta v. Orkin Exterminating Inc.*, 180 F. Supp.2d 353, 359 (N.D.N.Y. 2001). Thus, a release from "any and all responsibility or liability of any nature whatsoever for any loss of property or personal injury" was held to be insufficiently specific to bar a claim for negligence. *See Kaufman v. American Youth Hostels*, 5 N.Y.2d 1016, 1018 (1959). The courts also find "release and hold harmless" language frequently utilized in the disclaimer clauses as insufficiently specific. *See Sivaslian v. Rawlins*, 88 A.D.2d 703, 704 (3d Dep't 1982); *see also Bernstein v. Seacliff Beach Club*, 35 Misc.2d 153, 155 (Dist. Ct. 1962) (holding that the language in the disclaimer clause stating that the plaintiff waives "claim for any loss to personal property, or for any personal injury while [a] member of a club," have not barred claims for negligence).

Where, however, the defendant specifically disclaims liability from a particular claim, such as negligence, the courts will uphold such a disclaimer. *See Scrivener v. Sky's the Limit, Inc.*, 68 F.Supp.2d 277, 278 (S.D.N.Y.1999) ("Participant expressly assumes all risk of injury and releases the Released Parties from any and all liabilities ... cased by the passive or active negligence of Released Parties."); *Lux v. Cox*, 32 F.Supp.2d 92, 96 (W.D.N.Y.1998) (the undersigned "hereby assumes full responsibility for any risk or bodily injury, death or property damage arising out of or related to the event(s) whether caused by the negligence of releasees or otherwise"); *Lago v. Krollage*, 78 N.Y.2d 95, 99 (1991) ("The document further provided that each person signing it: agreed to release [defendants] ... from all liability claims ... from any cause whatsoever including negligence of any of the foregoing.").

Besides specifically mentioning the cause of action for which a disclaimer is asserted, the disclaimer must also be written in a language easily understandable to a lay person. As one court

4

put it, "a provision that would exempt its drafter from any liability occasioned by his fault should not compel resort to a magnifying glass and a lexicon." "Rather, what the law demands is that such provisions be clear and coherent." *See Gross*, 49 N.Y.2d at 107.

In the present case, prior to participating in the test-ride, plaintiff executed a release form which reads in pertinent part as follows:

> This Release extends to any and all claims I have or may have against the Released Parties, even if such claims result from strict liability or negligence on the part of any or all of the Released Parties, concerning the design, manufacture, repair or maintenance of the motorcycles(s) which I will be demonstration riding, or concerning the conditions, qualifications, instructions, rules or procedures under which the demonstration ride is conducted, or from any other cause. I understand that this means that I agree not to sue any or all of the "released parties" for any injury resulting to myself or my property arising from, on in connection with, my demonstration ride.

Contrary to plaintiff's contention, and in accordance with the above-cited case law, the Court finds that the language of the release expresses in unequivocal and clear terms the intention of the parties to relieve defendants from liability caused by defendants' negligence.

Another factor that courts consider in determining whether to enforce a disclaimer clause, is the plaintiff's awareness of the disclaimer in question. *See Mut. Marine Office, Inc.*, 485 F. Supp. 351 at 354. As a general rule, defendant must demonstrate that the plaintiff was aware of the disclaimer prior to entering the transaction in question. Here, defendants easily satisfy this requirement. Prior to participating in the test-ride, plaintiff signed the following statement: "By singing this release, I certify that I have read this release and fully understand it and I am not relying on statements or representations of anyone released thereby." Under these circumstances, the Court finds that the release signed by plaintiff is enforceable, unless plaintiff can demonstrate that it is void under the New York General Obligations Law §5-326 or that defendants' actions in

5

conducting the test-ride amounted to gross negligence.

### B.     Whether Defendants Acted With Gross Negligence?

While the exculpatory clause in the contract between plaintiff and defendant may shield defendant from liability for ordinary negligence, it will not protect the defendant from liability for gross negligence. *See Colnaghi, U.S.A. v. Jewelers Protection Servs.*, 81 N.Y.2d 821, 823 (1993); *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 553-554 (1992). Gross negligence is defined as a "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Sommer*, 79 N.Y.2d at 554; *see also Gold Connection Discount Jewelers, Inc. v. Am. Dist.*, 212 A.D.2d 577, 578 (2nd Dep't 1995); *Colnaghi, U.S.A., Ltd. v. Jewelers Protection Serv., Ltd.,* 81 N.Y.2d 821, 823-24 (1993).

Upon reading plaintiff's complaint, the Court concludes that its allegations, when viewed in the aggregate, are sufficient to state a cause of action for gross negligence.[1] Defendants argue that plaintiff cannot prevail on this claim due to the absence of evidence in the record to support it. However, plaintiff's counsel asserts that little, if any, discovery has yet taken place in this case

---

[1] Some of the allegations in plaintiff's complaint that may be read as alleging a claim for gross negligence are as follows:
    (1) [defendants] knew or should have known that their factory riders were conducting test rides in an unsafe and improper manner;
    (2) [defendants] knew or should have known that their factory riders were demonstrating the speed and agility of the motorcycles by operating the "lead motorcycle" in excess of the speed limit knowing that the participants were going to follow the "lead motorcycle," and, in fact, expecting the participants to follow the "lead motorcycle";
    (3) [defendants] should have known that their factory riders were demonstrating the agility of the Buell motorcycle by intentionally operating the motorcycle on secondary roads with many curves;
    (4) [defendants] knew or should have known that their factory riders were demonstrating the speed of the Buell motorcycle by intentionally operating the motorcycle on secondary roads with many straight aways that allowed the factory rider to reach speeds well in excess of the posted speed limit;
    (5) [defendants] knew or should have known that their factory riders were encouraging and permitting the participants to operate motorcycles in excess of the speed limit.

and that evidence of gross negligence may be found. Based upon *Fed.R.Civ.P. 56(f)* the Court finds defendants' motion on the issue if gross negligence to be premature and will deny it without prejudice at this time.

### C. Whether Release is Void Under New York General Obligations Law § 5-326?

Plaintiff claims that the release signed by him is void as against public policy pursuant to the terms of the Gen.Obl. Law §5-326. In return, defendants argue that the section in question is inapplicable to plaintiff's situation. Gen. Obl. Law §5-326 provides as follows:

> Every covenant, agreement or understanding in or in connection with, or collateral to, any contract, membership application, ticket of admission or similar writing, entered into between the owner or operator of any pool, gymnasium, place of amusement or recreation, or similar establishment and the user of such facilities, pursuant to which such owner or operator receives a fee or other compensation for the use of such facilities, which exempts the said owner or operator from liability for damages caused by or resulting from the negligence of the owner, operator or person in charge of such establishment, or their agents, servants or employees, shall be deemed to be void as against public policy and wholly unenforceable.

To void a release of liability executed by a user of a recreational facility pursuant to Gen. Obl. Law § 5-326, the individual must have paid a fee for the use of the facility. *See Miranda v. Hampton Auto Raceway*, 130 AD2d 558 (2nd Dep't 1987) (release signed by plaintiff was void under statute "since (plaintiff) ... paid a fee to use the defendant's racing facility and was injured while engaged in the activity for which he paid the fee and signed the release"); *Lago*, 78 N.Y.2d at 100 (membership fee, paid by plaintiff four months prior to race, was not "fee or other compensation for the use of (any) such facilit(y)" within meaning of statute); *Beardslee v Blomberg*, 70 AD2d 732, 733 (3d Dep't 1979) (statute not applicable by its terms insofar as the release executed by injured party was neither in connection with, nor collateral to plaintiff's admission ticket). The courts in New York State, however, "do not deem the statute ... as limited in application to the person or entity who actually pays the fee. Rather, the statute, by its express terms, is applicable to an owner or operator of a recreational facility who *receives* a fee."

7

*Williams v. City of Albany*, 706 N.Y.S.2d 240, 242 (3d Dep't 2000) (release executed by a player was void as against public policy, where player's team paid fee to corporation to participate in the league).

In the present case, the Court cannot conclude that, as a matter of law, defendants have not received a fee on plaintiff's behalf. Even though plaintiff did not directly pay defendants for the opportunity to test-ride the Buell motorcycle, the record does not preclude the possibility that defendants received monetary or other compensation from Americade for conducting the test-rides in question. Also the Court cannot conclude that, as a matter of law, defendants were not "owners" or "operators" of Americade or the test-rides of Buell motorcycles. With respect to this issue, the record, among other things, fails to set forth the contractual relationship between Americade and defendants. Thus, material issue of facts continues to exist with respect to whether defendants (1) received compensation for providing plaintiff with a test-ride and (2) qualify as operators within the meaning of Gen. Obl. Law § 5-326. Accordingly, the Court must deny defendants' motion without prejudice at this time.

## IV.  CONCLUSION

For the forgoing reasons it is hereby

ORDERED that defendants' motion for summary judgment is DENIED.

IT IS SO ORDERED.

Dated:   August 1, 2005
         Syracuse, New York

Norman A. Mordue
U.S. District Judge

8